UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-02380-MJ-D'Angelo

UNITED STATES OF AMERICA

v.

ANNERI SAGRARIO IZURIETA and
JOSEPH ABDEL NAVARRO VERDE,

Defendants.
_____/

FILED BY KAN D.C.

Feb 27, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   No

3. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?   No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024?   No

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:   /s/ Ana Maria Martinez
Ana Maria Martinez
Assistant United States Attorney
Florida Bar No. 0735167
United States Attorney's Office
99 NE 4th Street
Miami, Florida 33132-2111
Tel.: 305-961-9431
Email: ana.maria.martinez@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>Anneri Sagrario Izurieta and<br>Joseph Abdel Navarro Verde,<br><br>*Defendants.* | ) <br> ) <br> )   Case No.   25-02380-MJ-D'Angelo <br> ) <br> ) <br> ) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 2017 to November 2024__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to conduct an unlicensed money transmitting business in violation of 18 U.S.C. § 1960 |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Cianella Crystal, Special Agent, HSI
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by __Face Time__ HSI: 9917

Date: __2/27/25__

_____
*Judge's signature*

City and state: __Miami, Florida__    Honorable Ellen F. D'Angelo United States Magisrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Cianella Crystal, Special Agent with Homeland Security Investigations, being duly sworn, do state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code. That is, I am an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, violations of federal law, including the offenses enumerated in Title 18, United States Code, Section 371 (conspiracy) and Section 1960 (unlicensed money transmitting business).

2. I am a Special Agent with the Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"), and have been so employed since February 2021. I am currently assigned to the Trade Based Money Laundering Group at the HSI office in Miami, Florida. As part of my duties, I investigate violations of federal law involving financial crimes.

3. As a federal agent, I have received specialized training for financial investigations and have conducted criminal investigations involving complex money laundering and financial fraud schemes. I have participated in the execution of arrest and search and seizure warrants that have resulted in the seizure of evidence of offenses relating to wire fraud, conspiracy to commit wire fraud, as well as money laundering offenses and conspiracy to commit money laundering offenses.

4. Prior to my tenure as a Special Agent with HSI, I was employed by the Florida Department of Law Enforcement ("FDLE") as a Crime Intelligence Analyst working in the Gangs, Guns, and Drugs High Intensity Drug Trafficking Areas (HIDTA) Task Force in Miami, Florida. During my time at FDLE, I also worked in the Sexual Offender Unit and Missing Persons Unit

located at FDLE Headquarters in Tallahassee, Florida. As a Crime Intelligence Analyst, I participated in investigations that required producing and analyzing data related to criminal organizations, analyzing cell phone records, monitoring electronic surveillance, conducting interviews, assisting in the managing of search warrant executions, and creating analytical products for presentation. I have a Master's degree in criminology and a Bachelor's degree in criminology and psychology from Florida State University.

5. This affidavit is submitted for the limited purpose of establishing probable cause that Anneri Sagrario IZURIETA ("IZURIETA") and Joseph Abdel NAVARRO-VERDE ("NAVARRO") conspired to conduct an unlicensed money transmitting business, in violation of 18 U.S.C. § 371. The information contained within this affidavit is based on my personal knowledge, training and experience, as well as information provided to me by other law enforcement officers, and my review of records and documents during this investigation. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish the probable cause.

## LEGAL BACKGROUND

6. Under 18 U.S.C. § 1960, it is a federal crime to knowingly conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmitting business.

7. Money transmitting includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier.

8. An unlicensed money transmitting business is a money transmitting business which affects interstate or foreign commerce in any manner or degree, and is operated without being

2

registered with FinCEN (Financial Crimes Enforcement Network), as required under 31 U.S.C. § 5330, or without a State license in states where it is required.

9. Section 1960 further provides that operating an unlicensed money transmitting business is a crime "whether or not the defendant knew the operation was required to be licensed or that the operation was so punishable."

10. In the State of Florida, it is a crime to engage in money services business without obtaining a license to do so.

**PROBABLE CAUSE**

11. From at least March 2017 through at least November 2024, IZURIETA and NAVARRO, who are mother and son, along with other relatives, have operated an unlicensed money transmitting business through corporations and fictitious business names registered in their names. In short, they received large checks from construction companies and provided large amounts of cash back to the construction companies, minus a fee of at least 5%

12. IZURIETA and NAVARRO and the businesses described below are not licensed with the State of Florida to operate a money transmitting business. Also, they are not registered with FinCEN (Financial Crimes Enforcement Network) to operate a money transmitting business.

13. The entities which IZURIETA and NAVARRO used to move the largest amounts of money for the unlicensed money transmitting business were JANV Construction Services, LLC (JANV), EIN: 82-1043474 and Every Construction Services (ECS), EIN: 81-3409347.

14. JANV was incorporated in Florida in March of 2017 by IZURIETA and NAVARRO. NAVARRO was removed from the corporate records in 2020. ECS was a fictitious business name, which IZURIETA maintained registered in Florida from 2016 to 2021. In 2022, A. IZURIETA registered the ECS fictious name as owned by JANV.

3

15. IZURIETA was an authorized signer on the bank accounts of both JANV and ECS. NAVARRO was also a signatory of the JANV bank accounts.

16. JANV maintained a website in which it purported to be in the construction business. However, interviews, bank analysis, and surveillance revealed that the construction businesses which were writing checks to JANV, were quickly receiving the money back in cash, minus a fee of at least 5%. Interviews, records, and surveillance further revealed that the business was operated out of IZURIETA's home. IZURIETA also would at times drive to pick up checks from construction companies. Also, representatives from construction companies would drive to IZURIETA's home. Records and interviews revealed the cash was used to pay the workers of the construction companies that were giving checks to JANV.

17. IZURIETA and NAVARRO were signatories on the JANV accounts at Truist Bank, TD Bank, and Regions Bank. Checks from numerous different construction related companies were deposited into those accounts. More than $32 million was deposited from mid-2016 through November 2024. Of that, approximately $17 million was deposited from January 1, 2020, through November 30, 2024. During that time frame, more than $11 million in cash was withdrawn by IZURIETA, NAVARRO, and other family members from the JANV bank accounts at Truist Bank and Regions Bank.

18. Additionally, from 2021 through November, 2024, approximately $700,000 was transferred to a JANV bank account in Honduras. Most of the remaining JANV funds were transferred to personal accounts of IZURIETA, NAVARRO, and their spouses.

19. IZURIETA and NAVARRO also used ECS in a similar way. From mid-2016 to mid-2021, over $5.3 million was deposited into the ECS account at TD Bank. The deposits into

the ECS account included checks from construction companies as well as transfers from JANV. From early 2017 to 2021 about $4 million was cashed out from ECS.

20. IZURIETA and NAVARRO also used two other companies as part of the unlicensed money transmitting business: The New Best Central America Foods Corp (NBCAF), EIN: 81-2622573, and Bon Marche International Corp (BMIC), EIN: 84-4466623. NBCAF was incorporated in the State of Florida in 2016. It did not make State corporate filings in 2017 and 2018. It was reinstated on July 6, 2020. BMIC was incorporated in the State of Florida in January 2020.

21. NAVARRO was listed as being the President of both NBCAF and BMIC in the corporate records. In the bank accounts of NBCAF and BMIC, both IZURIETA and NAVARRO were signatories. In 2021 and 2022 these companies were used to deposit checks from construction companies as well as checks from JANV. NBCAF received about $1.3 million from JANV. BMIC received approximately $370,000 from JANV. A large portion of the funds were cashed out by IZURIETA and NAVARRO. Other funds were transferred to IZURIETA'S personal account or deposited into personal accounts of NAVARRO and his wife.

22. In summary, from 2017 to 2024, IZURIETA cashed out approximately $7.9 million from JANV, ECS, NBCAF, and BMIC. During the same time period, NAVARRO cashed out almost $3 million from JANV, ECS, NBCAF. During the same time period, another relative cashed out approximately $5.8 million from JANV and ECS. From 2022 to 2024, another relative cashed out approximately $870,000 from JANV. Additional funds were cashed out by other relatives.

5

23. In furtherance of the conspiracy to operate an unlicensed money transmitting business, in Miami-Dade County, IZURIETA and NAVARRO, committed the following overt acts.

24. On or about August 2, 2024, IZURIETA cashed a JANV check, payable to herself, for $14,900.

25. On or about November 12, 2024, NAVARRO signed his name on a Regions Bank withdrawal slip for $15,000 in cash.

## CONCLUSION

26. Based upon the above information, as stated above, I respectfully submit that there is probable to believe that from at least March 2017 to at least November 2024, IZURIETA and NAVARRO conspired to conduct an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960, all in violation of 18 U.S.C. § 371.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
CIANELLA CRYSTAL
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Face Time, HSI: 9917, this 27th day of February, 2025.

_____
HONORABLE ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE